IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SEOUL BROADCASTING SYSTEM INTERNATIONAL, INC. and MBC DISTRIBUTION, INC., d/b/a MBC AMERICA, <br><br>      Plaintiffs, <br><br>vs. <br><br>HANSIN KANG, JAMES LANE IVEY, and KYUNG HWAN OH, all formerly doing business as NEW WORLD VIDEO, and JOHN DOES 1 TO 10, inclusive, <br><br>      Defendants. | Civil Action No. _____ <br><br><br><br><br><br><br><br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiffs Seoul Broadcasting System International, Inc. and MBC Distribution, Inc. d/b/a MBC America (collectively "Plaintiffs") file this Complaint against Defendants Hansin Kang, James Lane Ivey, Kyung Hwan Oh and John Does 1 to 10 inclusive (collectively "Defendants"), and show this Court as follows:

### NATURE OF THE ACTION

1.      This is an action for copyright infringement and unfair competition, arising out of the Defendants' unauthorized and illegal copying, rental, and sale of counterfeit reproductions of Plaintiffs' popular and proprietary Korean television programming.

## JURISDICTION AND VENUE

2.      This is an action for damages and injunctive relief for copyright infringement under 17 U.S.C. §§ 101 *et seq.*, for unfair competition and false designation of origin in violation of the federal Lanham Act, 15 U.S.C. § 1125(a), and for unfair competition and deceptive trade practices in violation of Georgia law.

3.      This Court has jurisdiction over this action under 17 U.S.C. § 101 *et seq.*, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) and (b). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1338(b) and § 1367(a).

4.      Venue is proper in this Court under 28 U.S.C. §1391, and this Court has personal jurisdiction over the Defendants in that the Defendants live in and have done or are doing business in the State of Georgia and in this District; the acts of infringement and unfair competition complained of herein occurred in the State of Georgia and in this District; and the Defendants have caused injury to the Plaintiffs in the State of Georgia and in this District.

## THE PARTIES

5.      Plaintiff Seoul Broadcasting System International, Inc., also known as SBS International, Inc. ("SBS International"), is a New York corporation which maintains its principal place of business in Los Angeles, California. SBS International is wholly owned by SBS Holdings Co., Ltd., a Korean corporation which is the controlling shareholder of Seoul Broadcasting System ("SBS"), a Korean corporation. SBS is one of the three largest television networks in South Korea ("Korea"), similar in scope to NBC or CBS in the United States. SBS is

widely recognized throughout the world for the high quality of its broadcast television programming and particularly for its serialized dramas, for which there is high demand around the world. Both SBS and SBS International derive significant revenue from advertisers and sponsors and from the sale and licensing of DVDs and other media forms of the proprietary programming of SBS and SBS International.

6.  Plaintiff MBC Distribution, Inc. d/b/a MBC America ("MBC America") is a California corporation that maintains its principal place of business in Los Angeles, California. MBC is wholly owned by Munhwa Broadcasting Corporation ("MBC"), a Korean corporation. MBC is one of the three largest television networks in Korea, also similar in scope to NBC or CBS in the United States. MBC is widely recognized throughout the world for the high quality of its broadcast television programming and particularly for its serialized dramas, for which there is high demand around the world. MBC and MBC America derive significant revenue from advertisers and sponsors, and from the sale and licensing of DVDs and other media forms of their proprietary programming.

7.  Defendant Hansin Kang ("Kang") is an individual who resides in the State of Georgia, at 305 Leatherwood Ct., Lawrenceville, Georgia.

8.  Defendant James Lane Ivey ("Ivey") is an individual who resides in the State of Georgia, at 1856 Collins Hill Rd., Lawrenceville, Georgia.

9.  Defendant Kyung Hwan Oh (Oh") is an individual that resides in the State of Georgia, at 2760 Drayton Hall Dr., Buford, Georgia.

10.  Kang, Oh, and on information and belief Ivey, are or were involved as owners, proprietors, principals, and/or operators of a business known as "New

World Video," which formerly conducted business at 5979 Buford Highway, Suite B-8, Doraville, Georgia.

11. The true names and capacities, whether individual, corporate or associate, or otherwise, of Defendants herein named as John Does 1 through 10 (the "Doe Defendants") are unknown to the Plaintiffs. If necessary, the Plaintiffs will seek leave of court to amend this Complaint when the true names of said fictitiously named Defendants are ascertained. The Plaintiffs are informed and believe and on that basis allege that the Doe Defendants were involved in directing, controlling, ratifying, participating in, materially contributing to, profiting from, inducing, encouraging, and/or facilitating, the violations and theft of the Plaintiffs' intellectual property rights complained of herein, or are otherwise liable to the Plaintiffs as a result of their participation in all or some of the acts hereinafter set forth. The Plaintiffs further are informed and believe and on that basis allege that each of the Doe Defendants was the agent of or acting in concert with at least one of the named Defendants, and in doing the things alleged in this Complaint was acting within the course and scope of such agency, and/or acted in concert with at least one of the named Defendants, and is jointly and severally liable to the Plaintiffs with said named Defendants.

## THE INFRINGING ACTIVITIES

12. Plaintiff SBS International is, and at all relevant times has been, the copyright owner and/or owner of exclusive rights under copyright with respect to television programming of SBS which has been copyrighted or for which applications for copyright registration have been filed with the U.S. Copyright Office and are currently pending (collectively, the "SBS Copyrighted Works").

The SBS Copyrighted Works include, but are not limited to, those listed in Exhibit "A" attached hereto and incorporated herein by reference.

13.  SBS International's ownership of exclusive rights to television programming of SBS in the United States is not limited to the SBS Copyrighted Works, but includes a wide variety of other television programs, such as news, dramas, variety shows and documentaries, which are eligible for copyright protection but for which no application for copyright registration has yet been filed with the U.S. Copyright Office (collectively the "SBS Protectable Works").  The SBS Copyrighted Works and the SBS Protectable Works are sometimes referred to collectively herein as the "SBS Works."  SBS International owns the exclusive right to broadcast and commercially exploit the SBS Works in North America.

14.  SBS International obtained its rights in the SBS Works by written contract with its affiliate, SBS.  SBS broadcasts a wide array of television programming, including the SBS Works, over the airwaves in Korea and via cable and satellite broadcast systems in Korea.  SBS International has an exclusive license from SBS to distribute and broadcast all the SBS Works within the United States, and has the exclusive right to register and enforce copyrights for the SBS Works in the United States.

15.  Plaintiff MBC America is, and at all relevant times has been, the copyright owner and/or the owner of exclusive rights under copyright with respect to television programming of MBC, which has been copyrighted or for which applications for copyright registration have been filed with the U.S. Copyright Office and are currently pending (collectively the "MBC Copyrighted Works").  The MBC Copyrighted Works include, but are not limited to, those listed in Exhibit "B" attached hereto and incorporated herein by reference.

16. MBC America's ownership of exclusive rights to MBC television programming is not limited to the MBC Copyrighted Works, but includes a wide variety of other television programs, such as news, dramas, variety shows and documentaries, which are eligible for copyright protection but for which no application for copyright registration has yet been filed with the U.S. Copyright Office (collectively the "MBC Protectable Works"). The MBC Copyrighted Works and the MBC Protectable Works are sometimes referred to collectively herein as the "MBC Works." MBC America owns the exclusive right to broadcast and commercially exploit the MBC Works in North America.

17. MBC America obtained its rights in the MBC Works by written contract with its affiliate, MBC. MBC broadcasts a wide array of television programming, including the MBC Works, over the airwaves in Korea and via cable and satellite broadcast systems in Korea. MBC America has an exclusive license from MBC to distribute and broadcast all the MBC Works within the United States, and has the exclusive rights to register and enforce copyrights for the MBC Works in the United States.

18. The SBS Copyrighted Works and the MBC Copyrighted Works are referred to collectively herein as the "Copyrighted Works." The SBS Protectable Works and the MBC Protectable Works are referred to collectively herein as the "Protectable Works." The "Copyrighted Works" and the "Protectable Works" are referred to collectively herein as the "Works."

19. For the Copyrighted Works, including but not limited to those listed on Exhibits "A" and "B," the Plaintiffs either (i) have received Certificates of Copyright Registration from the Registrar of Copyrights or (ii) have applications for copyright registration currently pending.

20.     Many of the Works are episodes of Korean-language serial programs (many with English subtitles) broadcast first over the airwaves of Korea by the respective Plaintiffs or their affiliated entities.

21.     Each of the Plaintiffs employs essentially the same business model for exploiting the Works in North America. The Works are not broadcast within the United States until approximately six weeks after they were first broadcast in Korea ("the Holdback Period"). During the Holdback Period, the Plaintiffs make the Works available for rental through a network of authorized video stores (the "Authorized Retailers"), or to paying subscribers to the relevant services available at the websites owned and operated by the Plaintiffs' respective affiliates in South Korea. The Plaintiffs supply master recordings of the Works to Authorized Retailers and grant Authorized Retailers a non-exclusive limited license to make DVD and videotape reproductions of the Works to rent to the public. The Authorized Retailers pay monthly or weekly license fees to the Plaintiffs for such license.

22.     For a number of years prior to January 23, 2014, Defendants' New World Video store was an Authorized Retailer of SBS International. However, during January 2014, the Defendants informed SBS International that New World Video would no longer take delivery of any of the SBS Works from SBS International. Accordingly, the SBS International non-exclusive limited license previously granted to New World Video was terminated effective January 23, 2014. As a result, SBS International ceased providing New World Video with masters of the Works, and Defendants and their New World Video store were no longer authorized to reproduce, rent, sell, or otherwise distribute SBS Works.

23. For a number of years prior to February 5, 2014, Defendants' New World Video store was an Authorized Retailer of MBC America. However, on or about February 5, 2014, the Defendants informed MBC America that New World Video would no longer take delivery of any of the MBC Works from MBC America. Accordingly, the MBC America non-exclusive limited license previously granted to New World Video was terminated effective on or about February 5, 2014. As a result, MBC America ceased providing New World Video with masters of the Works, and Defendants and their New World Video store were no longer authorized to reproduce, rent, sell, or otherwise distribute MBC Works.

24. Notwithstanding the termination of their license from SBS International, after January 23, 2014 the Defendants continued to rent and sell to the public, from the store location of New World Video, unauthorized and illegal DVD copies of numerous SBS Works.

25. Notwithstanding the termination of their license from MBC America, after February 5, 2014 the Defendants continued to rent and sell to the public, from the store location of New World Video, unauthorized and illegal DVD copies of numerous MBC Works.

26. The DVDs of SBS Works and MBC Works being reproduced, rented and sold by Defendants from their New World Video store without authorization after January 23, 2014 and February 5, 2014, respectively, included counterfeit DVDs of recent episodes of SBS and MBC television programs, which the Defendants or those acting for or in concert with them reproduced and obtained illegally from some unknown source other than SBS International and MBC America.

27. Upon information and belief, the reason the Defendants refused to take further delivery of any of the SBS Works from SBS International after January 23, 2014, and of any of the MBC Works from MBC America after February 5, 2014, was that the Defendants intended to obtain the SBS Works and MBC Works from unauthorized sources, to make or have someone make unauthorized and illegal counterfeit DVD copies from the same, and to rent or sell these counterfeit DVDs of the Works to the public.

28. Among the Plaintiffs' Copyrighted Works which the Defendants illegally copied, rented, and sold at New World Video are numerous episodes of the following popular programming:

| Broadcast Network | Program |
| --- | --- |
| SBS | My Love from the Star |
| SBS | Doctor Stranger |
| SBS | Three Days |
| SBS | Angel Eyes |
| MBC | The Moon Embracing the Sun |
| MBC | The Greatest Love |

29. On February 25 and March 18, 2014, SBS sent two separate written demands to the Defendants at New World Video, demanding that they cease and desist making and distributing unauthorized copies of the SBS Works. Copies of these demands are attached hereto as Exhibits "C" and "D." However, the Defendants disregarded these demands and continued to engage in their illegal activities as described above.

30. On May 22, 2014, a representative of SBS visited the New World Video store and confirmed that the store was still renting and selling unauthorized

DVDs of SBS programming, including counterfeit DVDs of recent SBS programming. The SBS representative hand delivered a cease and desist letter dated May 21, 2014 to the person operating the New World Video store who identified himself as Defendant Oh. A copy of this letter is attached hereto as Exhibit "E". Oh turned over a limited number of counterfeit DVDs of recent SBS programming to the SBS representative, and represented that New World Video would stop its illegal activities.

31. Despite this promise to cease their unlawful conduct, Defendants continued to engage in their illegal activities described above.

32. In July 2014, a representative of MBC America visited the New World Video store, and confirmed that the store was renting and selling unauthorized DVDs of MBC programming, including counterfeit DVDs of recent MBC programming.

33. On September 16, 2014, Plaintiffs' lawyer sent a letter to the Defendants demanding, on behalf of both SBS International and MBC America, that Defendants and New World Video immediately cease and permanently desist from their illegal copying, sale and rental of unauthorized and counterfeit reproductions of SBS Works and MBC Works, and that they turn over all unauthorized copies of SBS and MBC programs, identify the sources from which they were obtaining unauthorized copies of the Works, and provide an accounting of all New World Video sales and rentals of unauthorized copies of the Works. A copy of this letter is attached hereto as Exhibit "F."

34. In an eventual response to this letter, the Defendants, through an attorney, informed Plaintiffs that Defendants were closing the New World Video store located at 5979 Buford Highway in Doraville.

35. On October 7, 2014, Kang and other representatives of the Defendants met a representative of the Plaintiffs at the New World Video store, and turned over to Plaintiffs' representative **more than 12,000 DVDs** that, upon information and belief, Defendants had been renting and/or offering for sale from the New World Video store.

36. Most of the Defendants' DVDs turned over to Plaintiffs were of SBS Works or MBC Works. These unauthorized DVDs include thousands of copies of hundreds of different SBS and MBC Works, many of which are Copyrighted Works.

37. However, upon inspection of the DVDs of SBS Works and MBC Works turned over to Plaintiffs and of an accompanying inventory list prepared by the Defendants, the DVDs consist primarily of older (pre-2012) SBS and MBC programs or episodes of programs. Defendants failed to turn over to Plaintiffs their DVDs of more recent episodes of the SBS Works and MBC Works, including episodes and programs from 2013 and 2014.

38. Despite numerous attempts by Plaintiffs, through their attorney, to seek to resolve the issues raised by Defendants' unauthorized and illegal activities, Defendants also have failed and refused to comply with Plaintiffs' demands that they provide information as to their source(s) for obtaining unauthorized copies of the Works, to provide an accounting of their rental and sale of unauthorized counterfeit copies of the Works, or to agree to permanently cease and desist from reproducing, selling, renting, or distributing unauthorized copies of the Works.

39. Accordingly, while the Defendants are no longer renting or selling DVDs from the New World Video store location at 5979 Buford Highway, Plaintiffs have reason to suspect that Defendants, and those acting in concert with

them, are continuing their illegal and unauthorized activities in reproducing, renting, and selling counterfeit DVDs of Plaintiffs' Works from another location or locations, or in otherwise illegally copying or distributing Plaintiffs' Works without authorization – including through renting and selling counterfeit DVDs of recent SBS Works and MBC Works that were not turned over to Plaintiffs, and through continuing their past practice of making unauthorized reproductions of current episodes of SBS Works and MBC Works for rental and sale.

40. Upon information and belief, the Defendants' illegal and unauthorized conduct is continuing, and, unless enjoined and restrained by this Court, will continue to cause the Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. The Plaintiffs have no adequate remedy at law.

41. The Defendants' infringing conduct has been intentional and willful, and has harmed the Plaintiffs in that it has, among other things, resulted in the loss of substantial license fees, and strained the plaintiffs' business relations with some of the remaining Authorized Retailers who had to compete with the Defendants' illegal and unauthorized sale and rental of the Works.

### FIRST CLAIM FOR RELIEF
**(Copyright Infringement Against All Defendants)**

42. The Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 of this Complaint.

43. By their conduct as alleged herein, the Defendants have unlawfully reproduced, rented, sold, distributed, and offered for rental, sale, and distribution, unauthorized copies (including but not necessarily limited to counterfeit DVD

copies) of numerous of Plaintiffs' Copyrighted Works and Protected Works, without the consent or permission of the Plaintiffs.

44. In doing so, the Defendants have violated the Plaintiffs' exclusive rights of reproduction and distribution of the Works, and are liable for infringement of the Plaintiffs' copyrights and of the Plaintiffs' exclusive rights under copyright in the Works, in violation of the U. S. Copyright Act, 17 U.S.C. § 101, *et. seq.*

45. The infringement of each Plaintiff's rights in and to each of the infringed Works constitutes a separate and distinct act of copyright infringement.

46. The foregoing acts of infringement perpetrated by the Defendants have been willful, intentional, and purposeful, in disregard of and with indifference to the rights of the Plaintiffs.

47. As a direct and proximate result of the infringements of the Plaintiffs' copyrights and exclusive rights under copyright in the Works, each of the Plaintiffs are entitled to recover their actual damages and disgorgement of the Defendants' profits in amounts which are not currently ascertainable but to be proven at trial.

48. Alternatively, each of the Plaintiffs are entitled to recover statutory damages with respect to each of the Copyrighted Works infringed, under 17 U.S.C. § 504(c), in the minimal amount of $750 per infringed Copyrighted Work. Given the willful nature of Defendants' infringement, the Plaintiffs are entitled to enhanced statutory damages under 17 U.S.C. §504(c), in an amount of up to $150,000 per infringed Copyrighted Work.

49. The Plaintiffs are further entitled to recover their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

50. Upon information and belief, the Defendants' conduct is continuing and, unless enjoined and restrained by this Court, will continue to cause the Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. The Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, the Plaintiffs are entitled to preliminary and permanent injunctions prohibiting the Defendants, and their employees, agents, and those acting in concert with them, from further infringements of the Plaintiffs' copyrights and exclusive rights, whether such copyrighted or copyrightable works are currently in existence or not.

51. The Plaintiffs are further entitled to impoundment and destruction or other reasonable disposition of all (i) copies of Works found to have been made or used in violation of the Plaintiffs' exclusive rights, including those copies that Defendants have downloaded onto any computer hard drive, server, or storage device; (ii) all other articles or electronic equipment used for the infringing copying or reproduction of the Plaintiffs' Works.

52. Plaintiffs are further entitled to impoundment of all accounting records and other records of Defendants or those acting in concert with them documenting or referring to the manufacture, copying, acquisition, source, sale, rental, or receipt of unauthorized copies of the Works or of other things involved in Defendants' violation of Plaintiffs' rights.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition Against All Defendants)

53. The plaintiffs incorporate by reference the allegations of paragraphs 1 through 52 of this Complaint.

54. By their conduct as alleged herein, the Defendants have been wrongfully trading on the Plaintiffs' reputation and goodwill. The Defendants' reproduction, rental, sale and/or distribution of unauthorized copies of the Plaintiffs' Works from the New World Video location, and from any other location or through any other means, was and is likely to confuse, mislead and deceive consumers to believe that the Plaintiffs are the source of the Defendants' products or services as alleged herein. On information and belief, customers of the Defendants are likely to have been confused and misled, and have actually been confused and misled, by the conduct of the Defendants and have rented or purchased unauthorized copies of the Plaintiffs' Works from the Defendants, thinking that the Plaintiffs are the source of the Defendants' products or services or have authorized the Defendants to make copies of their Works and to rent, sell and/or distribute the same.

55. The conduct of the Defendants as alleged herein constitutes unfair competition, false designation of origin, and infringement of the Plaintiffs' protected trademarks and trade dress, in violation of section 43(a) of the Lanham Act; 15 U.S.C. § 1125(a).

56. As a result of the conduct of the Defendants, the Plaintiffs have suffered damage in an amount equal to the profits generated by the Defendants' rental, sale and distribution of unauthorized copies of the Plaintiffs' Works, the profits the Plaintiffs would have generated if not for the Defendants' illegal and improper conduct, and damage to the Plaintiffs' reputation and prestige, all in amounts to be proved at trial and trebled, pursuant to 15 U.S.C. § 1117.

57. In addition, given the willful nature of Defendants' violations the Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs incurred herein, pursuant to 15 U.S.C. § 1117.

58. The Plaintiffs are further entitled to an injunction preventing the Defendants and their agents and employees and those acting in concert with them from copying, reproducing, renting, selling, distributing, or offering for rental, sale, or distribution, any of the Plaintiffs' copyrighted and copyrightable works, whether such copyrighted or copyrightable works are currently in existence or not; from advertising their infringing products or services as alleged herein; and from taking any other action likely to cause customer confusion as to the source of the Defendants' products or services described herein. The Plaintiffs are also entitled to an order that all articles or electronic equipment used for the infringing copying or reproduction of the Plaintiffs' Works be impounded pending resolution of this action and thereafter destroyed.

## THIRD CLAIM FOR RELIEF
### (Deceptive Trade Practices Under O.C.G.A. §10-1-370 et. seq. and Common Law Unfair Competition Against All Defendants)

59. The Plaintiffs incorporate by reference the allegations of paragraphs 1 through 58 of this Complaint.

60. The wrongful conduct of the Defendants as alleged herein constitutes unfair competition and unfair and deceptive trade practices in violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. §10-1-370 et. seq., and of the common law of the State of Georgia.

61. The Plaintiffs are entitled to recover the damages they have sustained due to Defendants' conduct, in an amount to be proved at trial.

62.  The Plaintiffs are further entitled to an injunction preventing the Defendants and their agents and employees and those acting in concert with them from copying, reproducing, renting, selling, distributing, or offering for rental, sale, or distribution, any of the Plaintiffs' copyrighted and copyrightable works, whether such copyrighted or copyrightable works are currently in existence or not, advertising their infringing products or services as alleged herein, or taking any other action likely to cause customer confusion as to the source of the Defendants' products or services described herein.  The Plaintiffs are also entitled to an order that all articles or electronic equipment used for the infringing copying or reproduction of the Plaintiffs' Works be impounded pending resolution of this action and thereafter destroyed, and to an award of costs and attorneys' fees.

**WHEREFORE,** the Plaintiffs pray for relief against the Defendants, and each of them, as follows:

A. That the Court award judgment to Plaintiffs and against Defendants on all counts of the Complaint;

B. For a preliminary and permanent injunction preventing the Defendants and their agents and employees and anyone acting in concert therewith from:

1. infringing the Plaintiffs' copyrights and exclusive rights with respect to the Plaintiffs' copyrighted or copyrightable Works (whether now in existence or hereafter created), including but not limited to those identified in Schedule "A" and Schedule "B" and those created in the future; and

    2. using any of Plaintiffs' trademarks and trade dress, advertising their infringing products or services as products that originate from or are associated with Plaintiffs, and from taking any other action likely to cause customer confusion as to the source, origin, affiliation, or association of the Defendants' products or services;

C.    For an order requiring the impoundment and destruction or other reasonable disposition of all (i) copies found to have been made or used in violation of the Plaintiffs' copyrights or exclusive rights, and (ii) all other articles or electronic equipment used for the infringing copying or reproduction of the Plaintiffs' Works.

D.    For an Order requiring impoundment of all accounting records and other records of Defendants or those acting in concert with them documenting or referring to the manufacture, copying, acquisition, source, sale, rental, or receipt of unauthorized copies of the Works or of other things involved in Defendants' violation of Plaintiffs' rights.

E.    That Plaintiffs have judgment against the Defendants, jointly and severally, on their copyright infringement claims for actual damages in an amount to be proved at trial and for disgorgement of all of Defendants' profits from their infringing activities, or for statutory damages in an amount of up to $150,000 per Copyrighted Work infringed, at each Plaintiff's election;

F.    That Plaintiffs have judgment against Defendants, jointly and severally, on their federal unfair competition claims for actual damages in an amount to be proved at trial and for disgorgement of all

|     |     |
| --- | --- |
|     | of Defendants' profits from their infringing activities, and that those amounts be trebled; |
| G.  | That Plaintiffs have judgment against Defendants, jointly and severally, on their Georgia state law claims for actual damages in an amount to be proved at trial and for disgorgement of all of Defendants' profits from their infringing activities; |
| K.  | For prejudgment interest according to law. |
| L.  | For an award of Plaintiffs' costs and attorneys' fees incurred herein; and |
| M.  | For such other relief as the Court deems just and proper. |

### **DEMAND FOR JURY TRIAL**

Plaintiffs SBS International and MBC America hereby demand a jury trial in this action.

Respectfully submitted, this 22nd day of January, 2015.

/s/ *Mark S. VanderBroek*
Mark S. VanderBroek
Georgia Bar No. 724440
Lucas Westby
Georgia Bar No. 594008
NELSON MULLINS RILEY &
SCARBOROUGH LLP
Atlantic Station / 201 17th Street, NW / Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (facsimile)
E-Mail: mark.vanderbroek@nelsonmullins.com
E-mail: lucas.westby@nelsonmullins.com

*Attorneys for Plaintiffs*
*Seoul Broadcasting System International, Inc. and*
*MBC Distributions, Inc.*

~#4827-0974-3137 - 44683/01500~